HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

BANCROFT LIFE & CASUALTY ICC, LTD,

                          Plaintiff,

        v.

CESAR SCOLARI,

                          Defendant.

CASE NO. C11-5017RBL

ORDER DENYING PLAINTIFF'S MOTION TO DISMISS AMENDED COUNTERCLAIMS

THIS MATTER is before the Court on Plaintiff's Motion to Dismiss Amended Counterclaims [Dkt. #47].  The Court has reviewed the record and the Court has heard oral argument.

The Motion is based on a forum selection clause contained in a 2005 Application and Subscription Agreement between the parties.  The clause provides:  "The benefits of this coverage may only be enforced within the jurisdiction and under the laws of St. Lucia[1]."  [*See*

---

[1] Scolari points out that in 2005, Bancroft was located in the British Virgin Islands, and that the forum selection clause was revised in 2008, apparently with the intent of making it retroactively "effective" and thus applicable to prior Certificate Holders, such as Scolari.

Dkt. #42-1 Ex. 1]  Bancroft seeks to enforce the forum selection clause, and asks this Court to dismiss Scolari's fraud-based counterclaims in favor of adjudicating them in St. Lucia.

Because the allegations of fraudulent conduct are plausible, are directly related to Bancroft's collection action, and are not within the forum selection clause at issue, Bancroft's Motion to Dismiss the Amended Counterclaims is **DENIED**.

## I.  BACKGROUND

This case involves a complicated, secretive insurance arrangement. Bancroft Life & Casualty ICC, Ltd. ("Bancroft") is a corporation owned by Bradley Barros.  It was formerly (including 2005) organized in Tortola, BVI, and is now organized under the laws of St. Lucia. It runs an insurance program called Premium Lite.  Bancroft's insured, Semper Fidelis, Inc., is alleged to be a shell entity, also owned by Bradley Barros.  Semper Fidelis has no place of business, no productive activity, and no employees.

Semper Fidelis apparently issues Certificates of Insurance to "Certificate Holders" such as Defendant Scolari and his entities, Sea Czar, Inc. and Staffworks, Inc.  Certificate Holders must be members of yet another Barros-owned entity, Associates Benefits Group (ABG). Bancroft insures Semper Fidelis as owner and beneficiary of the policy.  ABG in turn supplies group insurance to its members, through the Certificates of Insurance. The members are given only the Certificates; they are not given copies of the "Group Master Policy," which is kept confidential.

In order to even view the Group Master Policy, a Certificate Holder must make a written request to do so, make an appointment, and travel to Semper Fidelis' offices in Castries, St. Lucia, West Indies.

1    As a material inducement to purchase its Premium Lite Insurance, Bancroft offers to loan

2 back to the Certificate Holders 70-75% of the premiums they have paid.  This loan obligation is

3 reflected in a Promissory Note, and the Certificate Holder is obligated to pay annual interest until

4 maturity.  At the expiration of an insurance policy's term (usually five years) Bancroft refunds  a

5 portion of the  premiums paid, adjusted for gains or losses on investments made by Bancroft with

6 these premiums (including loans to Certificate Holders), less claims paid and administrative

7 expenses.

8    A company that creates a self-insurance fund is typically required to pay taxes to the

9 United States Government on the fund.  In contrast, if the statutory and regulatory requirements

10 of the jurisdiction in which Bancroft is domiciled are strictly followed, a United States company

11 participating in Bancroft's "insurance" program can apparently deduct the premium payments on

12 their tax return.  This tax avoidance feature is the material benefit to the Certificate Holder.

13    In September 2005, Bancroft's Master Group Policy, described this "premium return"

14 feature:

15        If after being continuously covered for a minimum period of three
        years, should any Certificate Holder elect to terminate insurance
16        under the policy and Certificate of Insurance, the Company agrees
        to return a portion of the premium paid by the Certificate Holder
17        from the inception of insurance on an experienced-based formula.

18    Under the cloak of secrecy surrounding the Group Master Policy terms, Bradley Barros

19 (acting for Bancroft and Semper Fidelis) unilaterally modified the premium return benefit,

20 effective 2010, adding that the return would be in Bancroft's sole and absolute discretion:

21        If after being continuously covered for a minimum period of three
        years, should any Certificate Holder elect to terminate insurance
22        under the policy and Certificate of Insurance, the Company *may, in*
        *its sole and absolute discretion,* return a portion of the premiums
23        paid by the Certificate Holder from inception of insurance on an
        experience-based formula. (Emphasis added).

24

Bancroft also unilaterally revised at least some of the Forum Selection provisions in its various documents over the course of Scolari's involvement in the Premium Lite Program.  For example, the 2010 version of the Group Master Policy[2] includes a much broader forum selection clause, which provides in part:

> Any action at law or in equity based upon, arising from or in any way related to the policy or any Claim, including, but not limited to, benefits payable under the policy, coverage issues, termination issues and premium refunds (i) must be brought in the Courts of St. Lucia, West Indies, which shall have exclusive jurisdiction over such matters[.]

Scolari enrolled in Bancroft's Premium Lite program beginning in 2005.  He paid something over $7 million in premiums, and borrowed back more than $5 million. When the parties' business relationship soured for a variety of reasons, Sacolari refused to pay[3] on the loans and Bancroft sued on the notes.  Scolari has asserted counterclaims including fraud, bad faith and the like, which are both defenses to the collection action and affirmative claims for relief.  Bancroft seeks dismissal of the Counterclaims in light of the forum selection clause(s).

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(3) permits a defendant to seek  dismissal for improper venue.  The Plaintiff has the burden of showing that venue is proper.  *See Piedmont Label Co. v. Sun Garden Packing Co.,* 598 F.2d 591, 496 (9th Cir. 1979).  On a Rule 12(b)(3)

---

[2] It is disputed whether Scolari or his attorney saw this document, or its predecessor, prior to paying his premium.  There is some evidence that the 2010 document was not actually so revised until recently, with a retroactive "effective" date.  Indeed, the record reflects a number of instances where Bancroft revised documents and dates after the fact.

[3] Though such an action would seem to fall within the forum selection clause as Bancroft broadly reads it, the notes themselves provided for enforcement in the U.S., where the bulk of Scolari's assets are presumably located.

1  motion to dismiss "the trial court must draw all reasonable inferences in favor of the non-moving

2  party and resolve all factual conflicts in favor of the non-moving party[.]"  *Murphy v. Schneider*

3  *Nat'l, Inc.,* 362 F.3d 1133, 1138 (9th Cir. 2004).  However, the pleadings need not be accepted as

4  true and a court may consider facts outside the pleadings.  *Holland Am. Line, Inc. v. Wartsila*

5  *North Am., Inc.,* 485 F.3d 450, 455 (9th Cir. 2007) (citing *Murphy,* 362 F.3d at 1137).

6       Forum selection clauses are presumptively valid.  *Murphy,* 362 F.3d at 1140.  "[A] clause

7  establishing ex ante the forum for dispute resolution has the salutary effect of dispelling any

8  confusion about where suits arising from the contract must be brought and defended ."  *E. & J.*

9  *Gallo Winery v. Andina Licores S.A.,* 446 F.3d 984, 992 (9th Cir. 2006) (quoting *Carnival Cruise*

10  *Lines, Inc. v. Shute*, 499 U.S. 585, 593-94 (1991)).  Thus, "a forum [selection] clause should

11  control absent a strong showing that it should be set aside."  *M/S Bremen v. Zapata Off-Shore*

12  *Co.,* 407 U.S. 1, 15 (1972); *Murphy,* 362 F.3d at 1140 ("Because forum selection clauses are

13  presumptively valid, they should be honored 'absent some compelling and countervailing

14  reason.'" (quoting *M/S Bremen,* 407 U.S. at 12)).  "The party challenging the clause bears a

15  'heavy burden of proof' and must 'clearly show that enforcement would be unreasonable and

16  unjust, or that the clause was *invalid for such reasons as fraud* or over-reaching.'"  *Murphy,* 362

17  F.3d at 1140 (quoting *M/S Bremen,* 407 U.S. at 15) (emphasis added).

18       Bancroft's primary argument is that "the forum selection clause" requires all of Scolari's

19  counterclaims – including those for fraud in the inducement – to be litigated in St. Lucia.

20  Bancroft glosses over the fact that Scolari's initial application included only a limited forum

21

22

23

24

1  selection clause, and instead emphasizes the broad language[4] it alleges is contained in the Group

2  Master Policy(s).  But those policies were not signed, were possibly not seen, and were likely not

3  even in existence at the time Bancroft first accepted Scolari's premiums.  The only executed

4  clause in effect at that time is not broad enough to encompass Scolari's fraud claims.

5          Furthermore, the counterclaims' allegations – broadly, fraud – are both defenses to

6  Bancroft's collection action and affirmative claims for relief.  There is ample evidence that

7  Bancroft unilaterally (and retroactively and secretly) modified provisions in the agreement,

8  including specifically the "return of premium benefit."  The action to collect on the promissory

9  notes and the claims regarding the return of premiums are inextricably linked, and should be

10 tried together.

11          The Motion to Dismiss the Amended Counterclaims [Dkt. #47] is therefore **DENIED**.

12         Dated this 28th day of November, 2011.

13

14         _____
           RONALD B. LEIGHTON
15         UNITED STATES DISTRICT JUDGE

16

17

18

19

20

21

22  _____

23      [4] In an effort to overcome Scolari's claim that he never even saw, much less signed, the
    Group Master Policy, Bancroft also argues that Scolari is a third party beneficiary of the
24  Bancroft/Semper Fidelis "contract."  This argument is not persuasive and is rejected.

ORDER DENYING PLAINTIFF'S MOTION TO
DISMISS AMENDED COUNTERCLAIMS - 6